

**Sydney Albert (Al) Smith**
**Attorney at Law, LLC**
**122 No. Cordelia Ave. (at corner of W. Davis)**
**P. O. Drawer 389**
**Elba, Alabama 36323-0389**
Voice: 334-897-3658        Fax: 334-897-8633
email: sydneyalbertsmith@charter.net

Dawn DeVane,
Legal Assistant



**June 10, 2005**

Ms. Cheryl L. Rankin
Investigator/Paralegal
Office of General Counsel
Alabama State Bar
The Disciplinary Commission
P. O. Box 671
Montgomery, AL 36101

RE:    CSP No. 05-561(A)
       Complaint of Laryie Jones

Dear Ms. Rankin;

Thank you for the opportunity to respond to Mr. Jones' complaint. The following is a history of Mr. Jones as is relates to my decisions and representation of him.

I was appointed to represent Mr. Jones in the Covington County Circuit Court on November 11/23/2004. The cases were numbered: CC-2003-187; Possession of a Controlled Substance and Possession of Drug Paraphernalia; CC-2003-418; Possession of a Controlled Substance and Possession of Drug Paraphernalia; CC-2003-419; Possession of a Controlled Substance and Possession of Drug Paraphernalia; CC-2004-374; Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Possession of a Controlled Substance. Mr. Jones went through sever al attorneys during the pendency of these cases.

In CC-2003-187 which originated as DC-2003-2425, the record reveals that Mr. Jones was arrested on November 1, 2002, with a bond of $13,000.00, later reduced to $10,000 and made on 11/20/2002. Attorney Manish Patel first represented him, then Attorney Larry Grissett appeared. Mr. Jones was indicted in this case on February 14, 2003, bond was set at $13,000.00 and he was arrested on May 14, 2003. Larry Grissett first represented him in Circuit Court. Mr. Jones made bond on 10/28/2003, but was ordered arrested on October 31, 2003, and was returned to jail on November 21, 2003. Mr. Grissitt was allowed to withdraw and Grand Lanier was appointed. The bond was revoked. The case was set for trial on February 23, 2004, was continued on motion of the

Page 1 of 5

| | | | | t o remove Grady Lanier as atty |
|---|---|---|---|---|
| CC-2000-253 | Covington Co. | Theft, 1st red to Unauth use of Veh | 6/26/01 | 1 yr. |
| CC-2000-14 | Covington Co. | Forg. 2nd and Poss. 2nd | 11/21/00 | Dism. |
| (Larry Grissett was first counsel and allowed to w/d on 4/4/00 and Grady Lanier appointed). | | | | |
| CC-1999-55 | Covington Co. | Forg. 2nd and Poss. 2nd | 9/25/00 | 3 yrs. |
| CC-1992-363 | Covington CO. | Theft. 2nd red to Theft 3rd | 4/26/95 | 1 yr |
| DC-2002-104 | Coffee County | Poss of Drug Paraphernalia | 8/22/02 | 90 da and 1 yr prob |

I offer this history of Mr. Jones as it is relevant as to how a defense of him must be approached. First, he is a convicted felon and the habitual offender act is applicable to him if he is convicted of a felony. Second, his record and any past failure to appear or other dispositions will affect his bail applications. Third his record of past counsel must be considered in dealing with him as well as his sophistication and knowledge of the court system and procedures. A flag was raised immediately with him since I was the third attorney appointed who actually did work in his pending cases in the circuit court.

I collected discovery and records as were available as soon as I received notice I was appointed. I then went to see Mr. Jones in the Covington County jail on January 6, 2005. The holidays delayed my initial visit to him. By the time I did visit with him, I had collected enough data on his cases to formulate a theory of a defense. We discussed that there just was no realistic defense to the traffic stops and the seizures of contraband from him. I saw no holes there. He was toast! I did, however, see the possibility of defending his cases from the standpoint of using an expert to analyze and testify that the charges should be only drug paraphernalia. Mr. Jones had each time, and these are all separate incidents, a device fashioned from a tool socket into a crack smoking device. There was residue on the device and the State Forensic Lab had tested each positive for cocaine or cocaine base, i.e., crack. I advised Mr. Jones that in my past life as a drug prosecutor in Coffee County, my policy was to charge these types of cases as a misdemeanor only, Drug Paraphernalia. However, the law did allow the charge of Possession of a Controlled Substance if **any** detectible amount of controlled substance was found. My theory, was to get the Court to permit us funds to hire an independent expert to analyze the devices and then to testify that the substance was once a controlled substance but was used up and only residue was left on a pipe. Mr. Jones thought this a splendid idea and told me that I was the first attorney that had come up with any defense for him. I advised him that this tactic would delay his trial until we could get the Court to allow us extraordinary expenses and send the devices for testing. This was agreeable to him. I also told him that I would not be sending copies of what I filed to him as it contained the theory of the defense that we did not want the DA to know about at this time and I was afraid that he could not secure the papers in the jail. This was agreeable to him, he stated he understood what I was doing.

Mr. Jones did mention that he wanted to get out on bond. In fact, he almost seemed obsessed with getting out on bond. I was aware from reviewing his file that he had committed each of the four

offenses now pending while he was out on bond on other. I knew that he was a habitual offender. I knew that the chances of him getting a bond or making a bond were slim to none and none had the advantage. I discussed this with Mr. Jones but, candidly, I don't know how much he absorbed. He seemed to have a good understanding of the method by which I wanted to defend him, but he was fixated on getting out on bond. I also knew that he had filed numerous pro se motions and suits against most anyone who was involved in his case. I told him that he was entitled to a lawyer, if he could not afford one he got an appointed one, or he could represent himself. He was not entitled to represent himself and an appointed lawyer and if I was going to be his lawyer, I would be the only one filing anything. He agreed but certainly did not adhere to that.

I filed ex parte motions for extraordinary expenses for a forensic chemist to analyze the devices seized from Mr. Jones. Judge McKathan had a hearing on February 15, 2005, on my motions. Mr. Jones was present and heard all of the argument. He also was knowledgeable that a continuance of the trial was necessary to permit the analysis and agreed to that. This agreement was done before the bench after the ex parte hearing. Mr. Jones had continued to file numerous motions and complaints pro se which had no merit and was only further irritating the court and the prosecutor. I again told him that only one of us needed to be the lawyer. Mr. Jones was filing pleadings such as for a speedy trial while at the same time agreeing that the only viable defense was to get the forensic analysis which would require time and a continuance of the trial. I was quite emphatic with him that he needed to stop. He didn't.

Mr. Jones continued to file pro se motions such as to Dismiss the Indictment, Habeas Corpus, Motion for Bond and the content of these was obviously "jail house lawyering" with law quoted in them that was not applicable to Alabama or his situation. Judge McKathan finally set one styled "Writ Of Habeas Corpus Petition" for hearing on April 20, 2005. Although it was Mr. Jones motion against my advice and instructions, I was present. The Court permitted Mr. Jones to speak and the only thing he could articulate was that he wanted to go home and get out of jail. I spoke up to the extent that Mr. Jones was entitled to some bond on all of his cases but probably could not make a bond if one was set. I again told Jones to quit filing all the junk he was filing and let me represent him. I advised him that I had a forensic expert hired and the evidence sent to him.

On May 9, 2005, I received the enclosed letter from Mr. Jones. As you can see, he advised that he was reporting me to the State Bar, then states that, "I will give you to next week to get me out of jail, so it up to you, or you will answer to the state bar." The same day I filed the attached Motion to Withdraw.

On June 3, 2005, Judge McKathan held a hearing on my motion to withdraw. Judge McKathan asked Mr. Jones why he couldn't get along with his lawyers that he had been through a lot of good lawyers. All Mr. Jones would reply was that he wanted to go home and get out of jail. Judge McKathan asked me to speak and I advised that I was not inclined to represent someone who threatened me but would certainly not defy the Court. I advised the Court that Mr. Jones had been agreeable to the analysis plan but would not heed my advice and stop filing the frivolous and harassing pleadings he continued. Judge McKathan granted my motion to withdraw, and as I was leaving the courtroom I heard Judge McKathan telling Mr. Jones that he had just run off one of the better criminal defense lawyers in the circuit. I also heard Mr. Jones' "one note" response that he just wanted to go home.

Mr. Jones states in his complaint that I refused to file any motions for him. I did file the

Motion for Extraordinary Expenses and arranged for the seized devices to be transferred to the forensic chemist hired by me. He is correct that I did not file a Motion to Dismiss or to get him out on bond. Prior counsel had filed and litigated a Motion to Dismiss which was denied. By the time I was appointed such a motion would have been untimely and was without merit anyway. The indictments are proper and the charges are legally brought. Previous counsel had also filed and litigated and was denied bond. One reason that I believe I have credibility with the Court and the DA is that I don't file frivolous motions. If I file it, it has merit. Mr. Jones' demands for dismissal and bond were without merit and he was advised by myself and others.

I don't know if Mr. Jones is playing the system by creating conflict with attorneys, getting them to withdraw and a new lawyer in which delays his trial. He certainly has the experience with the system and the Court. He is facing a minimum of 15 to 99 or life under the habitual offender act and has alienated the DA to the extent no helpful recommendation is forthcoming for a plea. He has certainly alienated me. I believe that my theory of defense was valid and agreed to by Mr. Jones.

Mr. Jones states in his complaint that he demanded that I file a motion to produce and that I said that the State will not produce any evidence. This is a ball faced lie! Mr. Jones knows that I filed a motion for discovery as did his previous counsel. He knows that I received a response and also have the response and file from his previous lawyer Mr. David Baker. I had the file which is about 8 inches thick with me on our first visit and each meeting thereafter. Mr. Jones knows that statement of his is a lie. Mr. Jones is obsessive with his wish to "go home". However, I am not at all sure that he is not just using the system, rather abusing the system, to avoid conviction and sentence. He is not dumb by any means.

I have also enclosed an alacourt print out of his cases and case history.

Sincerely,

Al Smith

CC:    Judge McKathan
       David Baker
       Grady Lanier
       Laryie Jones

*[Handwritten at top:] DATE OF THESE CASES - 9-24-02, 5-14-03, 6-11-03 9-25-03*
*CASES No. 2003-418-419-187 (ESSENTIAL PART OF THE RECORD TO AN UNDERSTANDING OF THE MATTERS SET FORTH*
*STATES FAIL TO TRY WITHIN TIME LIMITS [18 USCS 3161]*
*(A), B, C, F, H.*

# MEMO

*[Handwritten:] Without any notice,*

**TO:   Honorable David Baker**  *[Handwritten:] HAS WITHDRAWAL ON NOV. 8 - 2004 BECAUSE PETITIONER*
*[Handwritten:] REFUSAL TO PLEA OUT.*

**FROM)  Walt Merrel  D.A**

**RE:** State of Alabama v. Layrie Earl Jones

**DATE:** November 1?, 2004

David,

Mr. Jones has six prior felony convictions (making his minimum sentence 15 years). He currently has three felony possession of controlled substances cases pending trial and two others pending in Circuit Court. He also has another soon to be felony possession of a controlled substance case pending out of Opp. I told them just to hold on to it, as five seemed like enough.

With six priors, and a nasty criminal history to boot, there is not much I can do. If he pleads to the three cases currently pending the trial docket, then I will dismiss the other two Circuit Court cases (including the charges against his wife) and will tell Opp to abandon their pending case. I will also recommend a sentence of eighteen years on each, to run concurrently. He will have to complete the one year long Therapeutic Community Outreach program while he is incarcerated. He will also have to pay all of the usual fines, costs, etc., etc.

As for probation or a split, I am opposed to outright probation. I would take no position on your request for a split sentence. I do however reserve the right to argue for a high end split. Also, please remember that if, upon conviction, he is sentenced to anything above 20 years, he is not eligible for a split.

This is my final offer. I have engaged in lengthy plea negotiations with Mr. Jones on multiple occasions. I will not do it again. He either takes this deal or we go to trial. Also, if we go to trial on these three cases. I will go to trial on the remaining cases. I will then seek consecutive sentences. Let me know what he says. Thank you.

*[Handwritten right margin:] DELAYS UNNECESSARY DELAYS*

Walt

*[Handwritten:] STATUS? RM I in?*

**C. Randall Clark, Ph.D.**
**2207 Heritage Drive**
**Opelika, AL 36804**

Home    (334) 749-8138
Office    (334) 844-8326
Fax        (334) 844-8331

June 16, 2005

Mr. Sydney Albert Smith
122 Cordelia Ave N
Elba, AL 36323-1914

Dear Mr. Smith:

This is to report the results of my analysis of the samples involving Mr. Laryee Earl Jones. I received four plastic bags from Mr. Mark Odom on May 11, 2005. Each of the four bags contained a small device made up of a metallic tube portion and a rubber-tubing portion. I washed the metallic portion of these devices individually with HPLC grade acetonitrile (an organic solvent of high purity) and did a gas chromatographic-mass spectral analysis on each of the resulting solutions. The case numbers and other identifying information and the results of each analysis are as follows:

*CC-2004-347*
*Dismiss 4-24-05*

Sample1. Case # 2004-06-015, 04DH02237, Suspect-Laryee Earl Jones, Linda Jean Austen, Date of Recovery-6/22/2004. The solution obtained from washing the device is positive for cocaine.

*CC-2003-187*

Sample 2. Case # DR-00474, 02DH02415, Suspect-Laryee Earl Jones, Date of Recovery-9/17/2002. The solution obtained from washing the device is positive for cocaine.

*CC-2003-419*

Sample 3. Case # DR-00504, 03DH01861, Suspect-Laryee E Jones, Date of Recovery-6/11/2003. The solution obtained from washing the device is positive for cocaine.

*CC-2003-418*

Sample 4. Case # 2003-05-009, 03DH01766, Suspect-Larryie Earl Jones, Date of Recovery-5/14/2003. The solution obtained from washing the device is positive for cocaine.

The solutions of cocaine obtained in the course of these analyses have been destroyed. The plastic bags of evidence will be returned to Mr. Mark Odom or other appropriate official. If you have any questions concerning this information please contact me.

Sincerely,

*C Randall Clark*

C. Randall Clark, Ph. D.